Breitel, J. (dissenting).
It would be difficult, if the question were still open for this court, to dispute the policy judgments reached in Danziger v. Hearst Corp. (304 N. Y. 244), and Stevenson v. News Syndicate Co. (276 App. Div. 614, affd. on other grounds, 302 N. Y. 81) and stated so well in Governor Dewey’s veto memorandum on a 1952 bill identical with the 1956 amendment which is the crux of this case (1952 Public Papers, Gov. *20 Thomas E. Dewey, p. 296). The trouble is that the question of policy is ultimately for the Legislature if indeed it has determined the question. This it did in 1956 and the bill was approved by Governor Harriman. In the latter’s approval memorandum he did not disagree with what Governor Dewey and the Association of the Bar of the City of New York had viewed as the effect of the earlier identical proposed legislation, all of which was before the Legislature or available to it when it passed the 1956 bill. Nor did he disagree with the detailed and documented views prepared for him in 1956 by the Executive Secretary of the Law Revision Commission and the Attorney-General, each of whom advised him that the effect of the bill was as Governor Dewey had said of the earlier one in 1952, and as the Association of the Bar of the City of New York had said then, in 1955, and was still saying in 1956 (see Reports of Committee on State Legislation, Assn. of Bar of City of New York: 1952 Bull. No. 1, p. 19; 1955 Bull. No. 3, p. 145; 1956 Bull. No. 3, p. 83).[1] In the words of the Attorney-General: “ This bill amends Section 337 of the Civil Practice Act. Its obvious purpose is to overcome the decision of Stevenson v. News Syndicate ”. While Governor Harriman did not disagree, he expressed the expectation, a vain hope as one can see from this case, that the statutory secrecy surrounding selected judical proceedings would prevent undesirable publication.[2]
Consequently from 1952 to 1956 and even to the present time, there has been unanimity that the 1952 bill, a 1955 bill, and the identical and successful bill of 1956, by deleting the word “ public ”, had the purpose of overruling the Danziger and Stevenson cases (supra). The effect was to give newspapers absolute immunity from tort liability for publication of ‘‘fair and true reports ” of judicial, legislative, or other official proceedings, even if not public (see Keogh v. New York Herald Tribune, 51 Misc 2d 888, 891, affd. 28 A D 2d 1209, mot. for lv. to app. den. on other grounds, 21 N Y 2d 955). (The citation by the CPLR *21 revisers to the Danziger case, supra, ‘‘ 304 N. Y. 244, 248-49, 107 N. E. 2d 62, 64’’, refers not to the holding on the scope of the privilege afforded by Civ. Prac. Act, § 337, but to the opinion’s discussion of the purposes of rule 278 of the Rules of Civil Practice, restricting distribution of filed papers by court officers [Fourth Prelim. Report of Advisory Comm. on Practice, N. Y. Legis. Doc., 1960, No. 20, p. 386].)
Were there any possible doubt in the matter, and the language of the statute as amended must be finely strained to raise a doubt, the 1952 bill jacket then before Governor Dewey dissipates it. The real sponsors for the vetoed 1952 bill, representatives for three separate newspapers or chains, including the lawyers for the present defendant, presented their views in formal memoranda making clear that the newspapers were seeking immunity in tort from publishing judicial materials required to be kept secret by the then Rules of Civil Practice (Domestic Relations Law, § 235). The bar association and civic organization opponents to the bill urged veto, at least one of them citing the harmful effects that would otherwise ensue in matrimonial and filiation judicial proceedings. Finally, item 6 of the bill jacket is a contemporary news item from an Albany newspaper reciting that an Assemblyman “ offered an amendment that would have, excluded matrimonial, adoption, or parenthood proceedings from the exemptions granted by the bill, but it was defeated overwhelmingly.”
I could quite agree with the concluding words in Governor Dewey’s memorandum on the 1952 bill:
“ It should be noted that the bill does not affect freedom of the press to print the truth or even to print falsehood if uttered in a public proceeding. This bill seeks to establish a right of freedom to report falsehood, without liability or responsibility, when the falsehood is uttered in a proceeding from which the public is barred. There should be no license to destroy by indirection the salutary protection afforded by the rules of court or statutes in such cases. ’ ’[3]
*22 Four years later, however, the Legislature and a different Governor made an identical bill the law of the State. The patent and uniformly consistent legislative history, quite unneeded in the face of the plain statutory language, sets unequivocally the purpose and meaning of the 1956 amendment. The result, however unfortunate it may be regarded, may not justify contradiction of the legislative command.
Accordingly, I dissent and vote to affirm.
Judges Burke, Bergan and Gibson concur with Chief Judge Fuld; Judge Breitel dissents and votes to affirm in a separate opinion in which Judges Scileppi and Jasen concur.
Order reversed, etc.
APPENDIX
1952 Public Papers of Governor Dewey, pp. 296-297
Albany, April 19, 1952
Memorandum filed with Senate Bill, Introductory Number 397, Printed Number 1744, entitled:
‘ ‘ An Act to amend the civil practice act, in relation to the privileges in action for libel. ’ ’
Not Approved.
In the case of Stevenson v. News Syndicate Co., 276 App. Div. 614, affirmed on other grounds, 302 N. Y. 81, it was held that a newspaper which prints a report of judicial proceedings which are not open to the public is civilly liable if the report is libelous. This bill would permit the publication of reports concerning judicial, legislative or other official proceedings to which the public does not have access and grant the publisher immunity without the necessity for proving truth.
Since 1847 the pleadings, testimony and other papers in matrimonial actions have been sealed under a judicial rule of civil practice. Unless leave is granted by the court, they may be examined only by the parties and their attorneys. Similar statutory protection is provided in a number of other situations, including children’s courts, wayward minor proceedings, youth *23 ful offender cases and adoption matters where it has been determined that the necessity for the protection of the persons involved transcends the right of public access to the information.
The rule is different for public proceedings. The Civil Practice Act affords publishers absolute immunity if the account published is a fair and true report of a public proceeding. This bill extends the privilege to all official proceedings whether public or private, whether protected by statute or by rule of court, whether sealed or open.
The language of the court in the Stevenson case is worthy of note:
" * * * by rule 278 it was, in effect, provided that in matrimonial actions the balance of convenience is in favor of the individual. That rule is founded on the policy that ‘no one has a right to examine or obtain copies of public records for mere curiosity, or for the purpose of creating public scandal. To publish broadcast the painful and sometimes disgusting details of a divorce case, not only fails to serve any useful purpose in the community, but on the other hand directly tends to the demoralization and corruption thereof, by catering to a morbid craving for that which is sensational and impure. The judicial records of the state should always be accessible to the people for all proper purposes, under reasonable restrictions as to the time and mode of examining the same, but they should not be used to gratify private spite or promote public scandal.’
“ In my opinion, it is illogical to hold that the defendant had the right to publish to its millions of readers information which not one of those readers could personally obtain. In situations where the public have the right of access to proceedings in open court, or the right to inspection of filed papers, the effect of a newspaper publication is that defendant’s reporter is the agent of the public to report to them what they could hear or see if they so desired. But when the public have no right to see the papers filed in a matrimonial action, a newspaper should not have the right to spread the allegedly false contents of those papers to the public.” (276 App. Div. at 618, 619, citations omitted).
It should be noted that the bill does not affect freedom of the press to print the truth or even to print falsehood if uttered in a public proceeding. This bill seeks to establish a right of freedom to report falsehood, without liability or responsibility, when the falsehood is uttered in a proceeding from which the public is barred. There should be no license to destroy by indirection the salutary protection afforded by the rules of court or statutes in such cases.
The bill is disapproved.
Thomas E. Dewey
*24 1956 Public Papers of Governor Harriman, pp. 444-445
Albany, April 20, 1956
Memorandum filed with Assembly Bill, Introductory Number 99, Print Number 99, entitled:
"An Act to amend the civil practice act, in relation to the privileges in action for libel.”
Approved.
The law presently affords the defense of privilege in an action for libel to one who publishes a true and fair report “ of any judicial, legislative, or other public and official proceedings.” This bill would amend the law by deleting the reference to ‘ ‘ public. ’ ’ In other words it would make it possible to publish, as in a newspaper, a report of a judicial, legislative or other official proceeding even though it is not public.
However, it should be noted that our statutes contain many provisions which preserve the secrecy of documents and testimony, such as in matrimonial actions (Rule 278, Civil Practice Act), the secrecy of testimony before a grand jury (Section 952, Code of Criminal Procedure) or statements made by a grand juror during the deliberations of the grand jury (Section 265, Code of Criminal Procedure). There are other comparable safeguards in the Executive, Legislative and Tax Laws and in other laws.
My approval of this bill cannot and should not be construed as a modification or weakening of the justifiable protections embodied in the laws mentioned. Secrecy and other safeguards where provided by our laws continue to be in effect and to be fully respected.
In the light of all these circumstances the bill before me appears to be reasonable. Undue restrictions upon the freedom of the press are not advisable.
This bill is approved.
Averell Harriman

. Bill jackets, assembled in the Governor’s offices, have been used as an aid in ascertaining legislative intent (e.g., Williams v. Williams, 23 N Y 2d 592, 601 [conc. opn. per Burke, J.]; County of Erie v. City of Buffalo, 4 N Y 2d 96, 104; People ex rel. Makin v. Wilkins, 22 A D 2d 497, 499; De Ville v. Continental Assur. Co., 10 A D 2d 386, 390, affd. 8 N Y 2d 1080).

. The entire memorandum by Governor Harriman is appended.

. The entire memorandum of Governor Dewey is appended.